### SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

### Lorraine K. CASSANO, et al., Defendants.

### No. 99 Civ. 3822(LAK).

United States District Court, S.D. New York.

Aug. 25, 1999.

Juan Marcel Marcelino, District Administrator, David E. Marder, Kimberly M. Zimmer, for plaintiff.

Franklin D. Ormsten, Jericho, NY, for defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This insider trading case is before the Court on the motion of defendants Dominic Alba, Dominic Spinelli, Josephine DeCicco and Claudio Spinelli (the "Alba Defendants") to dismiss the complaint on the grounds that it fails to plead fraud with the particularity required by FED.R.CIV.P. 9(b) and fails to state a claim upon which relief may be granted. Given the nature of the motion, the well pleaded factual allegations of the complaint are assumed to be true, and plaintiff is entitled to the benefit of all inferences reasonably drawn therefrom.

*Facts*

This case arises out of alleged insider trading in 1995 based on material non-public information concerning the intention of International Business Machines Corporation ("IBM") to make a hostile tender offer for the common stock of Lotus Development Corporation ("Lotus").

Defendant Lorraine Cassano was a secretary employed by IBM. By late April or early May 1995, she learned from documents that she was asked to copy that IBM was preparing to acquire Lotus, a fact confirmed to her by her supervisor, a financial analyst working on the project, on May 5. On or about May 31, she learned that the IBM board had met and authorized the commencement of the tender offer and that the bid would be announced on or about June 5. All of this information was non-public.

Cassano began informing her husband, defendant Robert Cassano, of IBM's plans in early May and kept him informed as she learned additional facts. On May 31 and June 1, Robert Cassano told a friend and co-worker, defendant P. Gerard Mazzone, of IBM's intentions and of the scheduled June 5 public announcement and asked Mazzone to secretly purchase stock for him in Mazzone's securities account. Mazzone agreed and, commencing on June 2, 1995, purchased 860 shares of Lotus for $24,490—stock he later sold for a profit of $27,520 which was shared between Mazzone and Robert Cassano.

On the morning of June 2, Mazzone shared the information he had been given by Cassano with Richard Cofrancesco, including the fact that the source of his information was an IBM employee. Cofrancesco, who never before had had a securities account or made any securities investments, immediately telephoned Dominic Alba, his cousin's husband, told him of IBM's plans, and sought advice as to how to profit from this information. Alba helped Cofrancesco open a brokerage account and told him to buy Lotus June $35 call option contracts. Cofrancesco did so

and made a profit in a single trading day of $24,688 on an investment of $688. Alba himself bought twenty Lotus June $35 call options, which he sold on June 5, thus realizing a one day trading profit of $49,-375 on his investment of $1,375.

Alba, according to the complaint, was not content to keep the tip he had received from Cofrancesco to himself. He promptly told his business partner, defendant Dominic Spinelli, with whom he owned a pizzeria, that he had learned from a reliable source that IBM was planning to take over Lotus and that IBM's plan would be announced on or shortly after June 5. Following this conversation, Spinelli also bought twenty Lotus June $35 call options on which he earned a profit identical to Alba's in the same span of time.

Both Alba and Spinelli tipped others. On June 2, Alba told his friend, defendant Josephine DeCicco, and Spinelli told Claudio Spinelli of the information they had obtained. Alba helped DeCicco open an account with Alba's broker and she too bought twenty Lotus June $35 calls. Claudio Spinelli bought 15 calls. Prior to these purchases, DeCicco never had maintained a brokerage account, and Claudio Spinelli never had invested in stocks or options.

Eventually, the trading of the Alba Defendants came to the attention of Commission investigators who questioned them about their activities. Alba and Dominic Spinelli both falsely denied to investigators that they knew anyone other than themselves who had purchased Lotus stock or options when, in fact, both knew that Claudio Spinelli, Cofrancesco and DeCicco had done so. DeCicco and Claudio Spinelli both falsely told investigators that they knew of no one else who had invested in Lotus on June 2, when DeCicco knew of Alba's purchase and Claudio Spinelli knew

of Dominic Spinelli's purchase. Finally, DeCicco and Dominic Spinelli both falsely told investigators that they had decided to purchase Lotus options based on media reports when in fact both had based their decisions on tips from Alba.

### Discussion

The complaint charges the Alba Defendants with violation of Section 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act")[1] and Rule 14e–3 thereunder.[2] It seeks injunctive relief pursuant to Section 21(d) of the Exchange Act.[3] The Alba Defendants assert that the Rule 14e–3 claim is one of fraud and that the complaint fails to plead that fraud with particularity, in that it fails adequately to allege that the defendants knew or had reason to know that the information as to the IBM tender offer for Lotus came from persons associated with IBM. In any case, they contend, the complaint fails to state a legally sufficient claim because it alleges no facts suggesting that they are now or hereafter will be likely to violate the Exchange Act, which is the statutory standard for the issuance of injunctive relief at the behest of the Commission.

### Rule 9(b)

The Commission assumes *arguendo* that Rule 9(b) applies to its complaint despite its assertion that there is "substantial doubt" as to whether that actually is so.[4] The Alba Defendants concede, at least for purposes of this motion, that the Commission need allege only facts showing that defendants had reason to know the ultimate source of the tips they received and need not plead that they actual knew that it came from IBM.[5] Hence, the scope of the debate here is quite limited. Giving the Alba Defendants the benefit of a reading of the Rule 9(b) standard most favorable to their motion, the question is wheth-

1.  15 U.S.C. § 78n(e).

2.  17 C.F.R. § 240.14e–3.

3.  15 U.S.C. § 78u(d).

4.  Pl.Mem. 10 n. 1.

5.  Def. Reply Mem. 2.

er the complaint alleges facts giving rise to a strong inference that they had reason to know that the information upon which they acted came from IBM.[6] Once the question is thus framed, the answer readily appears.

■ While there is no allegation that any of the Alba Defendants was told in so many words that the information in question was leaked from IBM, the facts surely suggest strongly that they had reason to know that that was the case. Information about anticipated tender offers ordinarily is tightly held. The bidder does not wish to alert the target lest it take defensive measures or to alert the market for fear that arbitrageurs and others will buy the target stock and run the price up. And while this is second nature to financially sophisticated persons, its essence is obvious even to a näif. These defendants certainly recognized that the information conveyed to them offered an exceptional profit opportunity—a recognition easily inferred from the hurried opening of new brokerage accounts and the purchase of call options by financially unsophisticated persons. Their understanding that they had an opportunity to "make a killing" indicates also their awareness of the secret nature of the information, as the profit opportunity was the direct result of the fact that the information was not generally known. Surely the lack of general awareness of the information of IBM's intentions made it entirely likely that IBM was its ultimate source. The fact that these defendants, according to the complaint, lied to SEC investigators about the circumstances of the trades and/or their awareness of such trading by others evidences knowledge of guilt. In all the circumstances, the facts alleged are more than sufficient to give rise to a strong inference that these defendants each had reason to know that the information on which they traded came from IBM.

*Injunctive Relief*

■ Section 21(d) of the Exchange Act [7] authorizes the issuance of injunctions restraining violations of the Act at the request of the Commission "upon a proper showing" where it appears to the Commission that "any person is engaged or is about to engage" in violations of the Act or the rules and regulations thereunder. A showing of past wrongdoing alone, however, is insufficient to warrant the issuance of an injunction.[8] Rather, the Commission must show "a cognizable risk of future violation, something 'more than the mere possibility which serves to keep the case alive.' " [9]

The Alba Defendants contend that they are unlikely to violate the securities laws in the future, as evidenced by the fact that the actions at issue in this case were isolated events that occurred several years ago. Perhaps. But the complaint alleges that these defendants, unless enjoined, will continue to violate Section 14(e) and Rule 14e–3. The Court is obliged to accept the truth of that allegation for purposes of this motion to dismiss, and so this aspect of the defendants' motion must be denied. Whether the Commission can prove the allegation remains to be seen.

*Conclusion*

For the foregoing reasons, the motion of defendants Dominic Alba, Dominic Spinel-

---

6. *See, e.g., S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir.1996) (plaintiff must allege facts demonstrating either that defendant had motive and opportunity to commit fraud or strong circumstantial evidence of conscious misbehavior or recklessness in order adequately to plead *scienter* in fraud case).

7. 15 U.S.C. § 78u(d).

8. *S.E.C. v. Bausch & Lomb Inc.*, 565 F.2d 8, 18 (2d Cir.1977).

9. *Chris–Craft Indus., Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 405 (2d Cir.) (Mansfield, J., concurring) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)), *cert. denied.* 414 U.S. 924, 94 S.Ct. 234, 38 L.Ed.2d 158 (1973).

li, Josephine DèCicco and Claudio Spinelli to dismiss the complaint is denied in all respects.

SO ORDERED.